# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CORDELIA MILLER, as Personal Representative
of the ESTATE OF DANIEL MILLER,

    Plaintiff,

-vs-

MICHIGAN DEPARTMENT OF
CORRECTIONS, a political
subdivision of the State of Michigan,
OFFICER DENNIS HALE, OFFICER JESSE
SWARTZ, OFFICER MARKUS HULZAR,
LIEUTENANT JOHN KENNELLY, and
WARDEN GARY MINIARD

    Defendants.

Case No.
Hon.
Mag.

---

JONATHAN R. MARKO (P72450)
CAITLIN E. MALHIOT (P76606)
MARKO LAW, PLLC
**Attorney for Plaintiff**
1300 Broadway Street, Fifth Floor
Detroit, MI 48226
Phone: (313) 777-7529
Fax: (313) 771-5785
jon@markolaw.com
cait@markolaw.com

---

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge, nor do I know of any other civil action, not between these parties, arising out of the same transaction or occurrence as alleged in this Complaint that is either pending or was previously filed and dismissed, transferred or otherwise disposed of after having been assigned to a Judge in this Court.

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff, Cordelia Miller, as personal representative of the Estate of Daniel Miller, deceased, by and through her attorneys, MARKO LAW, PLLC, and for her Complaint hereby states as follows:

## INTRODUCTION

1. This is a civil rights/wrongful death action under 42 U.S.C. § 1983 resulting from a systemic indifference to incarcerated people with mental health needs at the Saginaw Correctional Facility ("SRF").

2. As a direct result of Defendants' actions and inactions, its policies, procedures, and customs, the mental health needs of SRF inmates are routinely ignored.

3. Daniel Miller ("Daniel") was incarcerated, under Defendants' care, with obvious and known mental health needs, whose suicidal ideation was ignored and who hanged himself in his cell on November 14th, 2020, resulting in his untimely death.

## JURISDICTION AND VENUE

4. This civil action is brought pursuant to 42 U.S.C. § 1981, et seq., and seeks monetary damages against Defendant for violations of 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments to the Constitution of the United States.

5. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), 1367(a), and 42 U.S.C. § 1983.

6. The amount in controversy greatly exceeds this Court's jurisdictional requirements, excluding interest and costs.

7. Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391(b).

## **PARTIES**

8. Plaintiff, Cordelia Miller, is the personal representative of the estate of the decedent, Daniel. Plaintiff is a resident of the City of Even Junction, Michigan.

9. Defendant, Michigan Department of Corrections, is a political subdivision of the State of Michigan duly organized to carry out governmental functions pursuant to the laws of Michigan, one of the functions being to organize, operate, staff, and supervise its detention center known as the SRF.

10. At all times relevant to this Complaint, Defendant Officer Dennis Hale was employed by the Michigan Department of Corrections and was responsible for, among other things, the welfare and safety of inmates at SRF.

11. At all times relevant to this Complaint, Defendant Officer Jesse Swartz was employed by the Michigan Department of Corrections and was responsible for, among other things, the welfare and safety of inmates at SRF.

12. At all times relevant to this Complaint, Defendant Officer Markus Hulzar was employed by the Michigan Department of Corrections and was responsible for, among other things, the welfare and safety of inmates at SRF.

13. At all times relevant to this Complaint, Defendant Lieutenant John Kennelly was employed by the Michigan Department of Corrections and was responsible for, among other things, the welfare of inmates at SRF.

14. At all times relevant to this Complaint, Defendant Warden Gary Miniard was employed by the Michigan Department of Corrections and was responsible for, among other things, the welfare of inmates at SRF.

## FACTUAL ALLEGATIONS

15. On June 26, 2020, Daniel was sentenced and taken into custody by Defendant Michigan Department of Corrections.

16. Daniel was placed in and processed at SRF.

17. Prior to his incarceration at SRF, Daniel had made suicide attempts at other facilities of Defendant Michigan Department of Corrections.

18. It was known to Defendant Michigan Department of Corrections, prior to November 2020, that Daniel had made suicide attempts at other facilities of Defendant Michigan Department of Corrections.

19. Defendants Kennelly and Miniard knew or should have known that Daniel had made suicide attempts at other facilities of Defendant Michigan Department of Corrections.

20. Prior to his incarceration at SRF, Daniel had been diagnosed with major depressive disorder.

21. All Defendants knew or should have known that, prior to his incarceration at SRF, Daniel had been diagnosed with major depressive disorder.

22. All Defendants knew or should have know that Daniel suffered from suicidal ideation.

23. All Defendants knew or should have known that there was a risk of Daniel attempting self-harm, including but not limited to suicide.

24. Prior to Daniel's suicide on November 14th, 2020, Plaintiff Cordelia Miller called SRF and informed a counselor known to her as Ms. Taylor that she was very concerned about Daniel and that she believed he may attempt suicide again, as he had before, and requested that Daniel be closely watched.

25. Despite Defendants' knowledge of Daniel's history with suicide, Defendants Kennelly and/or Miniard moved Daniel from a cell where he felt comfortable, to units where Daniel had previously been raped and experienced sexual harassment for being gay.

5

26. Daniel even filed several grievances pursuant to the SRF grievance procedure during the month prior to his suicide regarding his concern about being moved.

27. On October 20, 2020, Daniel filed a grievance that indicated he was concerned about his own personal safety.

28. Daniel filed another grievance on October 21, 2020, indicating the same concerns.

29. Then, on November 2, 2020, Daniel filed another grievance indicating that he was being harassed and treated unfairly in the new unit because of his sexuality.

30. Daniel filed an appeal on November 4, 2020, again indicating that he was being harassed and threatened in his new unit, and that he did not feel safe.

31. All Defendants owed a duty of care to Daniel.

32. Despite Daniel's known risk of suicide or attempted suicide, and the known stressors that he was then experiencing due to harassment and fearing for his safety, Daniel was left unsupervised in a cell with bunk beds, bedding, and a step ladder with handholds.

33. Upon information and belief, Defendant Officers Hale, Swartz, and Hulzar were responsible for observing and monitoring the prisoners of the 600 unit, which is the unit where Daniel resided on November 14, 2020.

34. Upon information and belief, Defendant Officers, Hale, Swartz, and Hulzar failed to timely and appropriately observe and monitor Daniel.

35. On November 14th, 2020, Daniel killed himself in his cell by hanging.

36. Daniel was found unresponsive in his cell and declared dead the same day.

37. Despite Defendants' knowledge of Daniel's high risk of suicide and suicidal history, they failed to adequately address the risk of take steps to provide adequate treatment, increasing the likelihood that he would commit suicide.

38. Despite Defendants' knowledge of Daniel's high risk of suicide and suicidal history, they failed to properly monitor Daniel or remove from his access the means by which to commit suicide.

39. Daniel exhibited clear intent to engage in self harm and had a known history of attempted suicide and Defendants, despite their knowledge of such, failed to take any steps to prevent the injury, including but not limited to removing material that was readily available for executing the harm, contacting mental health, placing him in an observation area, or taking any other steps to prevent the harm.

40. Defendants' callous disregard of Daniel's obvious pain and suffering and suicidal ideation rose to the level of reckless and intentional harm which was the cause of Daniel's self-injurious behavior.

41. Daniel's death is a direct result of Defendants' explicit disregard of policy, gross negligence, and deliberate indifference to Daniel's health and welfare.

## COUNT I - 42 U.S.C. § 1983 CONSTITUTIONAL DEPRIVATIONS
(Against Individual Defendants)

42. Plaintiff hereby incorporates by reference the preceding paragraphs as though fully stated herein.

43. Defendants are persons within the meaning of the term under 42 U.S.C. § 1983.

44. Plaintiff decedent, Daniel, was entitled to constitutionally protected rights as a citizen of the United States of America, such as a right to personal safety and right to medical care and protection encompassed in the substantive component of the Due Process Clause of the Fourteenth Amendment.

45. As an incarcerated prisoner in SRF, Plaintiff decedent was also owed rights under the Eighth Amendment ensuring protection from cruel and unusual punishment, including the right to have reasonable measures taken to guarantee his safety and to treat his serious medical needs.

46. Defendants, as Plaintiff decedent's custodial caretakers, owed Plaintiff decedent an affirmative duty to secure for him the constitutionally protected rights identified above.

47. Defendants, knowing Plaintiff decedent's psychological and medical needs, had a duty under state law, to instruct, supervise, train, direct, and conduct

themselves and/or their employees to assure the delivery of medical care and supervision to Plaintiff decedent that is consistent with his health and safety, and which avoided the unreasonable risk of severe harm to him.

48. The acts and omissions attributable to the Defendants under 42 U.S.C. § 1983 were unreasonable and performed knowingly, deliberately, intentionally, maliciously, with gross negligence, callousness, and reckless indifference to Plaintiff's well-being and in complete disregard of Plaintiff's safety, with wanton intent for Plaintiff to suffer the unnecessary and intentional infliction of pain, failure to obtain timely medical treatment, and failure to properly train, supervise, develop and implement policies providing adequate medical and psychiatric treatment to a prisoner and by reason of which Plaintiff is entitled to compensatory and punitive damages.

49. The conduct of the Defendants deprived Plaintiff decedent, Daniel Miller, of his clearly established rights, privileges and immunities in violation of the Fourth, Eighth and Fourteenth Amendments of the United States Constitution and of 42 U.S.C. § 1983.

50. Defendants' conduct exhibited a deliberate indifference by intentional acts and omissions and otherwise grossly negligent behavior so as to breach Plaintiff decedent's right to basic safety and causing constitutional deprivation of his individual rights.

51.     Defendants not only breached this duty but also acted, under color of law, with gross negligence and deliberate indifference to Plaintiff decedent's safety, protection by:

- Failing to properly render the proper medical attention to a prisoner who was diagnosed and generally recognized as mentally ill;

- Failing to properly train correction officers in the evaluation of whether a prisoner needs medical treatment;

- Failing to provide decedent with appropriate supervision given his medical needs and suicidal ideation;

- Failing to properly address Plaintiff decedent's immediate suicide risk, recklessly disregarding decedent's suicidal history, and decedent's health and safety;

- Failing to place Plaintiff decedent in a safe environment so that he could not harm himself or others;

- Failing to properly supervise Plaintiff decedent on November 14th, 2020, knowing the risk decedent posed to himself;

- Failing to act in other ways that exposed Plaintiff decedent to a known, extreme risk to his health and safety that may or will become known during discovery.

52.     As a direct and proximate result of the aforementioned conduct and omissions of Defendant, Plaintiff decedent, Daniel Miller, was deprived of his constitutionally protected rights as described above and suffered pain and suffering, economic damages, and the prisoner's death.

WHEREFORE, Plaintiff requests the following relief:

- Extreme pain and suffering and mental health and emotional damages resulting from Defendants' acts and omissions up to and including his death;

- Loss of comfort, society, and companionship;

- Reasonable medical, funeral, and burial expenses;

- Compensatory and punitive damages;

- All damages allowed under the Wrongful Death Act including economic damages and loss of society and companionship; and

- Any and all other damages otherwise recoverable under 42 U.S.C. §§ 1983 and 1988, including an award of attorney fees and costs.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, including punitive damages under 42 U.S.C. § 42, in excess of $75,000.00 together with interest, costs and attorney's fees.

## COUNT II

**AMERICANS WITH DISABILITIES ACT (ADA) VIOLATION – FAILURE TO ACCOMMODATE – Michigan Department of Corrections**

53. Plaintiff hereby incorporates by reference the preceding paragraphs as though fully stated herein.

54. At all times relevant hereto, Plaintiff decedent, Daniel, was an individual and Defendant's jail was a public service within the meaning of the Americans with Disabilities Act ("ADA"), being 42 USC §12131, et seq.

55. At all times relevant hereto, Daniel was a person with a disability in accordance with the ADA.

56. Daniel was an individual with a disability in accordance with the ADA, in that he had a mental impairment that substantially limited one or more of his major life activities.

57. Daniel's disability was a major depressive disorder, suicidal ideation, and other psychological disorders.

58. At all times relevant hereto, Defendant had a duty under the ADA to accommodate Daniel unless the accommodation would impose an undue hardship. Defendants' duty to accommodate Daniel includes, but is not limited to, providing him with ongoing adequate medical and mental health care, and when his propensity for suicidal ideation was known, transferring him to a safe location and properly supervising and monitoring him.

59. At all times relevant hereto, Defendant could have accommodated Daniel's disability without suffering an undue hardship.

60. As a direct and proximate result of Defendant's disability discrimination, Daniel has suffered mental anguish, emotional distress, outrage, fear of impending death, death, and all other damages or consequences related to the incidents set forth above.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, for whatever sum he is found to be entitled to together with costs, interest, attorney fees, and punitive and/or exemplary damages.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff, Cordelia Miller, as Personal Representative of the Estate of Daniel Miller, deceased, respectfully requests this Honorable Court to enter judgment in her favor and against Defendants, for whatever sum she is found to be entitled together with costs, interest, and attorney fees.

                Respectfully submitted,

                /s/ *Jonathan R. Marko*
                Jonathan R. Marko (P72450)
                **MARKO LAW, PLLC**
                1300 Broadway Street, Fifth Floor
                Detroit, MI 48226
                (313) 777-7529 / Fax: (313) 777-5785
                Email: jon@markolaw.com

Date:  May 2, 2022

## **DEMAND FOR TRIAL BY JURY**

NOW COMES Plaintiff, Cordelia Miller, as personal representative of the Estate of Daniel Miller, deceased, by and through his attorneys, **MARKO LAW, PLLC**, and hereby demands a trial by jury in the above-captioned matter.

                                        Respectfully submitted,

                                        /s/ *Jonathan R. Marko*
                                        Jonathan R. Marko (P72450)
                                        **MARKO LAW, PLLC**
                                        1300 Broadway Street, Fifth Floor
                                        Detroit, MI 48226
                                        (313) 777-7529 / Fax: (313) 777-5785
                                        Email: jon@markolaw.com

Date: May 2, 2022