UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| The Estate of DANIEL MILLER and CORDELIA MILLER, in her capacity as the Personal Representative for the Estate of Daniel Miller,<br><br>  Plaintiffs,<br><br>v.<br><br>MICHIGAN DEPARTMENT OF CORRECTIONS, OFFICER DENNIS HALE, OFFICER JESSE SWARTZ, OFFICER MARKUS HUIZAR, LIEUTENANT JOHN KENNELLY, and WARDEN GARY MINIARD,<br><br>  Defendants. | Case No. 22-10934<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO FILE THREE VIDEOS IN THE TRADITIONAL MANNER AND UNDER SEAL [13]**

Daniel Miller died by suicide in his prison cell at the Saginaw Correctional Facility (SRF). (ECF No. 13, PageID.63.) SRF surveillance cameras captured prisoners and staff discovering his body and responding to his death. (*Id.*) Believing that the Michigan Department of Corrections and several officers violated Daniel's rights under the Constitution and the Americans with Disabilities Act, Daniel's mother, Cordelia Miller, sued on his behalf. (*See* ECF No. 1.)

Defendants have now moved to file three prison surveillance videos under seal and in the traditional manner as part of their motion to dismiss. (ECF No. 13,

PageID.60; *see also* ECF Nos. 13-5. 13-6. 13-7.) After Defendants provided the videos to her under a limited protective order, Miller opposed the motion. (ECF Nos. 11, 15.)

## I.

"[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597 (1978). Accordingly, "there is a strong presumption in favor of openness" regarding court records. *Shane Grp., Inc., v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016) (quoting *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1178 (6th Cir. 1983)). "Only the most compelling reasons can justify non-disclosure of judicial records." *Id.* (citation omitted). And even when there is a compelling reason to seal certain documents, courts must "narrowly tailor[]" the seal to that purpose. *Id.* Accordingly, before a Court can seal a record, the moving party must show "(1) a compelling interest in sealing the records; (2) that the interest in sealing outweighs the public's interest in accessing the records; and (3) that the request is narrowly tailored." *Kondash v. Kia Motors Am., Inc.*, 767 F. App'x 635, 637 (6th Cir. 2019) (citing *Shane Grp.,* 825 F.3d at 305).

Miller claims the videos should not be sealed because Defendants lack a compelling interest in sealing them and because the public interest in accessing the videos outweighs the Defendants' interest. This Court disagrees on both counts.

A.

Defendants say they have a compelling interest in sealing the videos: that failing to seal the surveillance videos would increase the risk of "inmate escape and the introduction of contraband or weapons" at SRF, as well as the risk of "assaults on prisoners, staff, and visitors[.]" (ECF No. 13, PageID.67.) In particular, they are concerned that making the videos publicly available could reveal "the layout, structure, field of view, resolution of the cameras, and camera placement" at SRF, including potential blind spots and the extent to which the cameras capture individual prison cells. (*Id.* at PageID.63.) To support their compelling interest in sealing the videos, Defendants provided a declaration from an Inspector at SRF who is "responsible for identifying and preventing potential threats to the safety and security" of the facility. (*See* ECF No. 13-4.) The Inspector reviewed the videos and concluded that their release to the public would "impact the safety and security of staff, prisoners, and members of the public." (*Id.*)

The Court agrees and notes that other courts have found it appropriate to seal or otherwise protect prison surveillance videos under similar circumstances. *See, e.g., Arnold v. Washington*, No. 13-CV-14137, 2018 WL 11302913, at *2 (E.D. Mich. Mar. 28, 2018) (granting protective order for video of a prison kitchen); *Cooper v. Bower*, No. 5:15-CV-P249-TBR, 2017 WL 3388953, at *1 (W.D. Ky. Aug. 4, 2017) (sealing a prison surveillance video because it would pose a potential security risk by revealing "camera angles and blind spots"). *But cf. Evans v. Mallory*, No. 08-12725, 2009 WL 2900718, at *3 (E.D. Mich. Sept. 2, 2009) (refusing to seal a video showing an alleged

3

use of excessive force inside a prison where the video was "the centerpiece of [Defendant's] summary judgment motion" yet never provided to the plaintiff).

Resisting this conclusion, Miller argues that the videos do not reveal "the existence of other security measures" at SRF and "do not show anything that would not be easily observable to someone already inside SRF." (ECF No. 15, PageID.456.) In other words, she suggests that leaving the videos unsealed would have little to no impact on prison security.

The Court cannot agree. While it is true that the videos do not reveal other security measures and that they capture areas already visible to individuals present at SRF, that hardly undermines Defendants' compelling interest in safety and security at the prison. As Defendants suggest, leaving these videos unsealed would give individuals outside the prison the ability to "freeze images, slow playback, or zoom in to see details of the activities on camera that might not be apparent to the naked eye at full speed." (ECF No. 16, PageID.460.) Additionally, Miller has not shown that individuals inside SRF would be able to determine if the cameras had blind spots or, if they did, their location. In other words, the videos provide more information than any individual could perceive on their own. And, as Defendants point out, this valuable information about the prison interior could be used to aid inmate escapes or introduce contraband. (*See id.*). So the Court finds that Defendants' interest in prison safety and security is compelling enough to merit sealing.

4

B.

As to the second requirement, Defendants say that their interest in sealing the videos outweighs the public interest because "[t]here is no purpose or public service in providing . . . videos detailing the inside of the prison." (ECF No. 13, PageID.68.) But Miller argues that there is a strong public interest in accessing the surveillance videos because of public interest in the proceedings. (ECF No. 15, PageID.456.)

While the Court agrees with Miller that this case is "a matter of public interest," it does not follow that the videos are also a matter of public interest. (*See* ECF No. 15, PageID.455.) Indeed, Miller never explains why the videos would be of interest to the public. (*See id.* at PageID.456.) Instead, Miller undermines this argument when she says that "the videos . . . are irrelevant [to her claims] and should not be introduced at all." (*Id.* at PageID.454; *see also id.* ("The Complaint does not allege that Defendants failed to make efforts to render aid **after** the suicide.").)

At present, there is no question that the public can follow these proceedings without accessing the videos, particularly when the Court has yet to rule on whether the videos can even be considered at the motion-to-dismiss stage. (*See* ECF No. 17, PageID.476–479 (Miller arguing that the exhibits attached to the motion to dismiss— including the surveillance videos—should not be considered by the Court at this stage).) And Miller may ultimately prevail in establishing that the videos are irrelevant. So the public interest in the videos is not strong. And, more importantly,

5

sealing the videos may serve the public interest by decreasing the likelihood of inmate escape and the introduction of contraband or weapons into prisons.

So the Court concludes that Defendants' interest in prison safety and security outweighs the public interest in the videos.

## C.

Lastly, the Court concludes that Defendants' request is narrowly tailored. As required, the Court has "analyze[d] in detail . . . the propriety of secrecy, providing reasons and legal citations" for its decision to seal the videos to ensure the safety and security of SRF. *See Shane Grp.,* 825 F.3d at 305–06. And as previously discussed, Defendants have requested to seal the videos (and only the videos) and has not requested to seal any of the other 15 exhibits they submitted with their motion to dismiss. (*See* ECF No. 14-1.)

## II.

In sum, the Court concludes that Defendants' have met their burden to seal the prison surveillance videos. (ECF Nos. 13-5, 13-6, 13-7.) However, the Court may be willing to reconsider this order if circumstances change. *See* E.D. Mich. LR 5.3(c); *see also Mitchell v. Tennessee,* No. 3:17-CV-00973, 2020 WL 6712169, at *1 (M.D. Tenn. Nov. 16, 2020) (vacating a prior order granting a motion to seal and noting that a district court has "inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment" (quoting *In re Saffady*, 524 F.3d 799, 803 (6th Cir. 2008))); *Evans v. Mallory*, 2009 WL 2900718, at *3 (refusing to seal

prison surveillance video because it was "the centerpiece of [Defendant's] summary judgment motion," among other reasons).

For the foregoing reasons, the Defendants' motion to file three prison surveillance videos under seal and in the traditional manner is GRANTED. (ECF No. 13.) The videos shall be submitted in USB flash drive format.

SO ORDERED.

Dated: August 8, 2022

                                              s/Laurie J. Michelson
                                              LAURIE J. MICHELSON
                                              UNITED STATES DISTRICT JUDGE