UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| The Estate of DANIEL MILLER and CORDELIA MILLER, in her capacity as the Personal Representative for the Estate of Daniel Miller,<br><br>      Plaintiffs,<br><br>v.<br><br>MICHIGAN DEPARTMENT OF CORRECTIONS, OFFICER DENNIS HALE, OFFICER JESSE SWARTZ, OFFICER MARKUS HULZAR, LIEUTENANT JOHN KENNELLY, and WARDEN GARY MINIARD,<br><br>      Defendants. | Case No. 22-10934<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER GRANTING
DEFENDANTS' MOTION TO DISMISS [14]**

In November 2020, Daniel Miller died by suicide in his prison cell at the Saginaw Correctional Facility (SRF). (ECF No. 13, PageID.63.) Believing that the Michigan Department of Corrections (MDOC) and several SRF officers violated Miller's rights under the Eight Amendment and the Americans with Disabilities Act, Miller's Estate sued on his behalf. (*See* ECF No. 1.)

In short order, Defendants moved to dismiss the case in its entirety. (ECF No. 14.) For the reasons that follow, the Court will grant the motion to dismiss.

## I.

In June 2020, Miller was taken into MDOC custody and placed at SRF. (ECF No. 1, PageID.4.) According to the complaint, the MDOC and the other defendants knew that Miller had been diagnosed with major depressive disorder and had attempted suicide at other MDOC facilities in the past. (*Id.* at PageID.5.) And at one point, Miller's mother called a non-defendant counselor at SRF to say that she was "very concerned about [Miller] and that she believed he may attempt suicide again[.]" (*Id.*)

Things took a turn for the worse a few months after Miller arrived at SRF. Defendant-officers John Kennelly or Gary Miniard moved Miller from a "cell where he felt comfortable" to a unit where he "had previously been raped and experienced sexual harassment for being gay." (ECF No. 1, PageID.5.) Soon, Miller was harassed again. (*Id.* at PageID.5–6.) So he filed several grievances begging to be moved. (*Id.* at PageID.6; ECF No. 14-13.) But he was not. (ECF No. 1, PageID.6.) Defendant-officers Dennis Hale, Jesse Swartz, and Markus Hulzar "were responsible for observing and monitoring the prisoners" in Miller's new unit. (*Id.* at PageID.6.)

Tragically, on November 14, 2020, Miller hanged himself after being "left unsupervised in a cell with bunk beds, bedding, and a step ladder with handholds." (ECF No. 1, PageID.6–7.) According to the complaint, Miller's death was "a direct result of Defendants' explicit disregard of policy, gross negligence, and deliberate indifference to [his] health and welfare." (*Id.* at PageID.8.)

So Miller's Estate sued the MDOC and five MDOC officers, alleging violations of Miller's rights under the Eighth Amendment and the Americans with Disabilities Act. (ECF No. 1, PageID.8–13.) Defendants moved to dismiss for failure to state a claim or, alternatively, because they are entitled to qualified immunity. (*See generally* ECF No. 14.) Given the adequate briefing, the Court considers the motion without further argument. *See* E.D. Mich. LR 7.1(f).

## II.

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 679–681 (2009). In deciding a motion to dismiss, the Court "construes the complaint in the light most favorable" to the Estate and determines whether its "complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *See Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). Detailed factual allegations are not required to survive a motion to dismiss, *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012), but they must "raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). What is plausible is "a context-specific task" requiring this Court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### III.

Two issues are now before the Court: (1) whether the Court can consider any of the 16 exhibits attached to Defendants' motion to dismiss, and (2) whether the Estate has stated a claim for relief. The Court takes each in turn.

### A.

Defendants spend most of their briefing using exhibits they attached to their motion to dismiss to dispute the factual allegations in the complaint. (*See, e.g.*, ECF No. 14, PageID.123 ("Plaintiff's claims that Miller made suicide attempts while in the MDOC prior to his placement at SRF . . . are clearly contradicted by Miller's medical records." (citing ECF No. 14-3)).) The Estate objects, arguing that none of these "unilateral, untested documents" should be considered at this stage of the litigation. (ECF No. 17, PageID.476–479, 483.)

"Generally, at the motion-to-dismiss stage, a federal court may consider only the plaintiff's complaint." *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014). However, the Sixth Circuit has recognized that "if a plaintiff references or quotes certain documents, or if public records refute a plaintiff's claim, a defendant may attach those documents to its motion to dismiss, and a court can then consider them in resolving the Rule 12(b)(6) motion without converting the motion to dismiss into a Rule 56 motion for summary judgment." *Id.*; *see also Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (noting that exhibits attached to a defendant's motion to dismiss can be considered "so long as they are referred to in the complaint and are central to the claims contained therein[.]"). But even if an exhibit

4

attached to a motion to dismiss satisfies this standard, a district court need not consider it if it "captures only part of the incident and would provide a distorted view of the events at issue[.]" *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008).

Upon review of the 16 exhibits attached to Defendants' motion, the Court will consider only one.[1] Defendants' exhibits include—among other things—over 200 pages of Miller's medical records (ECF No. 14-3), Miller's misconduct tickets at SRF (ECF Nos. 14-9–14-12), and the medical examiner's report following his death (ECF No. 14-16). Defendants urge the Court to consider this evidence because the complaint "repeatedly references both the adequacy of Miller's treatment and the knowledge of [the MDOC] and its employees of Miller's mental health history and alleged suicidal ideation[.]" (ECF No. 19, PageID.496.) That is not enough to bring them within the scope of the motion to dismiss. As the Estate notes, the complaint "does not reference or rely on [his] treatment at MDOC prior to his placement at SRF, [his] disciplinary history at SRF . . . [or] the many other factual allegations brought forth in Defendants' Motion." (ECF No. 17, PageID.473–474.) In other words, almost none of the exhibits are "referred to in the complaint[.]" *See Bassett*, 528 F.3d at 430. So they cannot be considered on a motion to dismiss. *See Luis*, 833 F.3d at 632 ("Miller's affidavit, although attached to Awareness's motion to dismiss, is plainly not

---

[1] Defendants also ask the Court to consider Miller's judgment of sentence in his underlying state criminal case (ECF No. 14-2) and the MDOC suicide-prevention policy (ECF No. 14-7) because they are public records. (*See* ECF No. 19, PageID.497.) The Court reviewed these documents but did not find them relevant to the disposition of this motion.

'referred to in the complaint.' The affidavit therefore does not fall within the categories of documents that may be considered at this point in the litigation.").

And even if the exhibits were referenced in the complaint, the exhibits "show only a distorted view of the entire situation" leading to Miller's death. (ECF No. 17, PageID.479.) The Estate suggests that the records do not shed sufficient light on "issues such as what was done on 'rounds' to check on [Miller] and the basis for determining that [Miller] was not a high suicide risk." (*Id.* at PageID.482.) The Court agrees and so will not consider most of the exhibits for this second reason.

But one exhibit will be considered at this stage: the grievances that Miller filed shortly before his death. (ECF No. 14-13.) The complaint references these grievances (ECF No. 1, PageID.6), and they are relevant to Miller's Eighth Amendment claim.

**B.**

The Court next considers whether the Estate has stated a claim under either the Eighth Amendment[2] or the Americans with Disabilities Act.

**1.**

The Estate brings Eighth Amendment claims against each of the individual officers. (ECF No. 1, PageID.8.) As mentioned, Defendants spend most of their

---

[2] The Complaint also referenced a "right to personal safety and right to medical care . . . encompassed in the substantive component of the Due Process Clause of the Fourteenth Amendment." (ECF No. 1, PageID.8.) But the Supreme Court has made clear that where a particular amendment "provides an explicit textual source of constitutional protection . . . that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing" the claim. *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.*, 560 U.S. 702, 721 (2010) (internal quotation marks omitted).

briefing prematurely disputing the factual allegations in the complaint. But they also argue that the Estate failed to state a claim against any of them. (ECF No. 14, PageID.127–129.) The Court agrees with the latter argument only.

The Eighth Amendment's prohibition of cruel and unusual punishments requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care, and [to] take reasonable measures to guarantee the safety of the inmates." *Zakora v. Chrisman*, 44 F.4th 452, 467 (6th Cir. 2022) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Accordingly, an officer violates the Eighth Amendment when he acts with "deliberate indifference to an inmate's serious medical needs." *Brawner v. Scott Cnty., Tennessee*, 14 F.4th 585, 591 (6th Cir. 2021). A viable Eighth-Amendment claim has both an objective and subjective prong, requiring the inmate to show that (1) he had an objectively serious medical need, and (2) "an official knew of [his] serious medical need and that, despite this knowledge, the official disregarded or responded unreasonably" to it. *See Downard for Est. of Downard v. Martin*, 968 F.3d 594, 600 (6th Cir. 2020) (citing *Farmer*, 511 U.S. at 834; and then citing *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

For purposes of this motion, Defendants do not dispute that Miller's major depressive disorder was a sufficiently serious medical need to satisfy the objective prong. (ECF No. 14, PageID.120 n.1.)

That leaves the subjective prong. The subjective prong requires that a defendant had a "sufficiently culpable state of mind" to be deliberately indifferent, which is "equivalent to criminal recklessness." *Santiago v. Ringle*, 734 F.3d 585, 591

7

(6th Cir. 2013) (internal quotation marks omitted). And because "each official's liability must be based solely on that official's own knowledge and actions, [courts] consider the subjective prong for each defendant separately." *Zakora*, 44 F.4th at 472. To satisfy this prong, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (applying this standard at the motion-to-dismiss stage). An official's subjective knowledge may be inferred from the fact that an inmate's "substantial risk" of harm was "obvious." *Downard*, 968 F.3d at 600.

But in the prisoner-suicide context, a plaintiff must clear a "high bar" to show that the substantial risk of harm was obvious: "it must have been obvious that there was a 'strong likelihood' an inmate would attempt suicide." *Id.* (quoting *Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005)). This showing "typically requires evidence that the inmate was already on suicide watch, previously attempted suicide under similar conditions, or recently expressed a desire to self-harm." *Id.* (citing *Grabow v. County of Macomb*, 580 F. App'x 300, 309 (6th Cir. 2014) (collecting cases)).

The complaint fails to satisfy the subjective prong as to any defendant.

For starters, the complaint does not explain how any defendant subjectively perceived facts that gave rise to an inference of Miller's risk of suicide. Instead, it merely says: "All Defendants knew or should have known that, prior to his incarceration at SRF, [Miller] had been diagnosed with major depressive disorder[,] . . . that [Miller] suffered from suicidal ideation[,] . . . [and that there was] a risk of [Miller] attempting self-harm, including but not limited to suicide." (ECF

8

No. 1, PageID.5.) These allegations are entirely conclusory and so are not entitled to the presumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, "an official's failure to alleviate a significant risk that *he should have perceived but did not*" cannot satisfy the Eighth Amendment. *See Farmer*, 511 U.S. at 838 (emphasis added). And beyond those two deficiencies, knowledge of "a risk of self-harm" is not knowledge of a "strong likelihood [that] an inmate would attempt suicide." *See Downard*, 968 F.3d at 600. So these allegations fail to state a claim.

And though the Estate pleads two relevant facts that could have put Defendants on notice of Miller's risk of suicide, neither did. First, the Estate alleges that Miller's mother told a non-defendant counselor at SRF that she was concerned that Miller might attempt suicide. But—critically—the complaint neither alleges that the counselor told any of the defendants about these concerns nor that this conversation occurred shortly before Miller's suicide. *See Zakora*, 44 F.4th at 472; *Downard*, 968 F.3d at 600. Second, the Estate pleads that Miller filed several grievances prior to his death. (*See* ECF No. 14-13.) But the grievances cannot support an inference of subjective knowledge because they focused solely on Miller's fear of assault and his desire to be moved, rather than his need for mental health care or risk of suicide. (*Id.*) And, in any event, there are no allegations that any defendant knew about the grievances. As explained, the subjective prong is "not an objective test or [based on Defendants'] collective knowledge." *See Gray*, 399 F.3d at 616.

In sum, the Estate has not stated an Eighth Amendment claim because the complaint failed to explain how any defendant subjectively knew of Miller's risk of

9

suicide and yet failed to act on that knowledge. *See Zakora*, 44 F.4th at 468 (holding that a deliberate-indifference claim following an inmate's death by drug overdose was insufficient because "[t]he complaint failed to . . . plausibly allege how any of the [police officers] came to obtain any knowledge about the prevalence of drugs at [the prison], how they ignored that knowledge, or how they failed to curb the introduction, spread, and usage of drugs" at the prison); *Whitley v. Michigan Dep't of Corr.*, No. 1:22-CV-448, 2022 WL 16847679, at *2 (W.D. Mich. Nov. 10, 2022) (dismissing prisoner-suicide case at the motion-to-dismiss stage because "it is not clear how any of the foregoing defendants would have had the knowledge about Whitley [and his risk of suicide] that Plaintiff attributes to all of them").

So the Eighth Amendment claim will be dismissed.

### 2.

The Estate also claims that the MDOC failed to accommodate Miller's major depressive disorder as required by the Americans with Disabilities Act. (ECF No. 1, PageID.12.)

The ADA applies to state prisons. *Mingus v. Butler*, 591 F.3d 474, 481–82 (6th Cir. 2010) (citing *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209–10 (1998)). And Title II of the ADA provides that no qualified individual with a disability shall, "by reason of such disability," be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity. 42 U.S.C. § 12132. Among other things, the ADA "require[s] the challenged discrimination to occur *because of* [a plaintiff's] disability, which is another way of saying that the plaintiff must establish

10

a but-for relationship between the protested act and the individual's disability." *Gohl v. Livonia Pub. Sch. Sch. Dist.*, 836 F.3d 672, 682 (6th Cir. 2016) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 351–52 (2013)). Accordingly, "courts routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment but do not allege that the inmate was treated differently because of his or her disability." *See Vick v. Core Civic*, 329 F. Supp. 3d 426, 443 (M.D. Tenn. 2018) (collecting cases).

This is such a case. The Estate argues that the MDOC violated the ADA when it failed to provide Miller "with ongoing adequate medical and mental health care, and when his propensity for suicidal ideation was known, transferring him to a safe location and properly supervising and monitoring him." (ECF No. 1, PageID.12.) But the complaint makes no additional allegations connecting that failure to Miller's disability—let alone establishing that his disability was a but-for cause of that failure. Thus, the ADA claim fails. *See Clayton v. Michigan Dep't of Corr.*, No. 17-1003, 2017 WL 6804104, at *2 (6th Cir. Aug. 21, 2017) ("[E]ven accepting as true his allegation that prison officials denied a request to transfer him to a facility with inpatient mental health treatment, he set forth no allegations to suggest that this denial was due to his HIV status."). As Judge Posner explained, the ADA "would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners. No discrimination is alleged; [Plaintiff] was not treated worse because he was disabled. . . . He is complaining about incompetent treatment of his [disability]. The ADA does not create a remedy for medical malpractice." *Bryant v. Madigan*, 84

11

F.3d 246, 249 (7th Cir. 1996); *see also Baldridge-El v. Gundy*, 238 F.3d 419 (6th Cir. 2000). Without more, the Estate's claim is merely one for medical malpractice.

Accordingly, the ADA claim will be dismissed as well.

## IV.

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. (ECF No. 13.) A separate judgment will follow.

SO ORDERED.

Dated: January 6, 2023

s/Laurie J. Michelson<br>
LAURIE J. MICHELSON<br>
UNITED STATES DISTRICT JUDGE